The next case called for oral argument is in re the Marriage of Renner. Counsel, whenever you're ready. Good morning. Wait until they get set up. Counsel. Good morning, Your Honor. Good morning. My name is Richard Thompson. I represent the appellant Shelly Renner. Shelly filed a petition in the trial court to increase her maintenance. The trial court denied it. We're asking this court to overturn that denial. There's a principle in medieval philosophy that says if something actually happens, then it must be possible for that thing to happen. As a matter of fact, if it did happen, then it could have happened. And when I learned that principle years ago, I never thought of applying a legal argument, but I think it touches one of our issues I'll refer back to when we get there. Joe, Shelly's husband, thinks that the trial court should be upheld. And basically he has two reasons for saying that. His first reason is he says, look, there were already two maintenance orders issued in this case. One in 2002, one in 2007, and they couldn't be modified. So when she comes in 2010 asking for modification, she's out of luck because the previous orders could not be modified. To address that issue, I think Joe is wrong there. If you look at the 2002 order, it says this order shall not be modified during its term. Its term is four years. So it looks like it can't be modified. But then it goes on to say unless Shelly files a petition to modify within that four-year period. Shelly did file a petition within that four-year period. And, in fact, the parties did modify the agreement. Mr. Sprague acknowledged at open court in the records that the 2007 agreement was a modification of the 2002. So applying that medieval principle, if it was modified, then it must have been possible to have been modified. It was modifiable. And when you look at its terms, it clearly said it shall not be modified during its term unless Shelly files a petition. So by its terms, it could be modified. And the procedure for modification was included in its terms. So that first maintenance order from 2002 could be modified. Then we get the next one in 2007. Could that be modified? Joe says, well, the 2007 order didn't change the language from the 2002 order about modification. And that is true. But if it didn't change the order about modification, that means that the 2007 order also could be modified if Shelly filed a petition within its term, just like the 2002 order could be modified. Shelly did file a petition for an increase within the term of the 2007 order. And we think filing that petition was procedurally proper because both of the prior maintenance orders could be modified, as can be seen from the fact that the first one was, and the second one really didn't say anything about modification. So when Joe says the trial court was right, first of all, because the previous orders could not be modified, we think Joe is wrong. And when you read the orders, you can see that clearly. Joe's second argument is, well, even if the orders could be modified, we had to prove a substantial change in circumstances in order to warrant an increase in maintenance. And, of course, that's correct. That's the law. Joe says we did not prove a substantial change in circumstances because at the original hearings on the prior orders, Shelly testified that she could not work, and now she's testifying again that she cannot work. She says she can't work then. She says she can't work now. No change in circumstances. Well, the statute says that when a court decides a modification of maintenance, it considers two sets of factors, those in Section 504 of the Marriage Act and those in Section 510, I think it is. And when you look at all those factors, there are several factors that I think we showed in our brief didn't show substantial change that would warrant a modification and an increase in maintenance. In other words, it's not just a question of, is Shelly's employability changed? It's a question of several other things changed. For example, in Section 510A.8, the amount of property that Joe and Shelly each own. That's a factor that could be considered. We showed in our brief that Joe has $2 million more in assets now than he had when the original order was entered. Joe says, well, my income didn't increase. Something increased. He has $2 million more in assets than he had before, and under the statute, that's a factor the trial court can't consider. And if there's been a substantial change there in the amount of property that Joe has, that could warrant an increase in maintenance. So when the parties agreed to change the length of the maintenance and the amount, couldn't they have negotiated also that it's modifiable? They could have negotiated that it's modifiable, but the law puts the burden the other way. The case law says that if the parties want to make an order non-modifiable, it has to explicitly state that it is non-modifiable. And I cite cases in the brief for that. And the trial court does not have the authority to make an order non-modifiable unless the parties have put that express language in it. So could they have done what you asked? Yes, I think so. But the law puts the burden on the parties when they want to fix it in stone, and if they want to do that to make it non-negotiable in the future, they have to say that in the order explicitly when it's first entered. There are other factors that the court must consider in deciding a modification or increase in maintenance, and if there is substantial change in those factors, then an increase is warranted. In Section 510A.9, it says any factor the court deems to be just and equitable. There's plenty of testimony in the record since 2007 when the second order was entered. Shelley's increased pain and difficulty in daily living tasks, brushing her hair, making the bed, washing the dishes. Dr. Mitchell testified that anything done with her left hand was going to be well nigh impossible now because of the deterioration in her condition. She has increased dependence on others for getting through the day, the activities I just mentioned, driving, getting someone into cleaning, getting someone in to help her with anything that you do in normal housekeeping. In my brief, I put the dates of all these deteriorations in her condition in bold print so the court could clearly see since 2007 when that second order was entered, the one we went to modify, there's been two, three more years of deterioration in Shelley's condition to warrant a new modification. There have been deterioration up to the point of 2007? That's correct. Okay. Then you're saying there's worsening deterioration, which is in fact a change in condition. There's no new condition, your argument is. Not a new condition. No, your argument. New areas of the arm, perhaps. Aggravation of an existing condition. Correct. The 5th District, back in 1984, Mary Gaitman, said that due to illness, though, and aggravation of conditions, I think the respondent's need for maintenance had increased substantially, and therefore its increase in maintenance was warranted. So I think the 5th District has precedent that a deterioration of one's health can be a valid basis for an increase in maintenance. Since that second point, the deterioration, proving it, showing that it is a substantial factor that has changed in the condition, that is really an evidentiary call for the trial judge, discretionary call for the trial judge, isn't it? That's true. But when there is substantial testimony from two physicians in the record, and the trial court limits its finding to employability, we suggest that the trial court, in fact, ignored all that evidence, and that wasn't abuse of discretion. The trial court's order says that its ruling is based on the fact that she couldn't work then and she can't work now. The trial court's order doesn't address at all the deterioration in her condition, which is a valid factor that the trial court should have considered and addressed in its ruling. So do you agree that the standard of review is abuse of discretion, not de novo? It's de novo to the extent that the trial court, when it entered the order in issue, was construing the previous ones as to modifiability. I think that's the de novo standard, because I cited a case, I think, which said that when the trial court is construing a previous order, that's a question of law. So on the question of modifiability, the standard of review is de novo, because that is a question of law. The trial court was looking at these previous orders from 0207, asking can they be modified by their terms. That's a question of law. That's de novo. The modification as to deterioration is abuse of discretion. But again, I think it isn't a case to ignore substantial evidence on the factor that the statute says is relevant to the issue. If there are no other questions, I'll stop. I don't think there are. Thank you. Thank you. Counsel? May it please the Court, my name is Robert Sprague. I represent the Apple League, Joseph Renner, and this is my associate, Blake Meinders. I think the facts in this case are clear. You have to read the language. The parties got divorced in 2002, at which time Mrs. Renner had about $755,000 in cash. Dr. Renner had about $300,000 for the real estate, and they provided for maintenance. In the 2002 order read that the husband shall pay the wife a sum of $3,000 per month for maintenance for a period of four years, from the entry of the judgment of dissolution of marriage commencing on June 1, 2002. Said maintenance shall not be modifiable during its term unless either party were to die, the wife were to continue on a consequent basis, in which event said maintenance would terminate. But then it provided, further, said maintenance shall not extend beyond four years unless the wife were to file a petition to seek review of the issue of the maintenance prior to the expiration of four years. That's the only language any place gives her right to modify. She, in fact, did file a petition within the four years to extend the maintenance. And the parties reached an agreement and set forth in the order what their agreement is. And their agreement in the 2007 order provided that the maintenance shall be modified as follows, $5,000 per month retroactive to August 1, 2006, through December 7, 2007, payable on the first day of each month. With the lump sum, $10,000 shall be paid within 14 days for the amount due August, December 2006. B, $4,000 per month January 1, 2008 to December 1, 2008. C, $3,000 per month January 1, 2009 to December 31, 2015. D, $2,000 per month from January 16 until petitioner's 62nd birthday, at which time it shall cease. That shows you the party's intention that this order was, that this maintenance was to cease. And as further goes on, the second paragraph provides petitioner shall continue to maintain life insurance policy on his life with respondents and beneficiary at the current level until January 1, 2009, at which time he may drop it to $250,000 until January 1, 2016, at which time he shall drop the coverage to $100,000 until the obligation to pay maintenance ceases. There's no language in this opposition. First of all, maintenance is non-modifiable. We think it's non-modifiable for two reasons. We think, and I cited the law, that when you modify a contract, a contract modified by the parties creates a new single contract consisting of the terms of the prior contract that the parties have not agreed to change in addition to the new terms on which they have agreed. It's our position that the sentence, said maintenance, shall not be modifiable during its term unless either party were to die, the wife were to have a continuing conjugal relationship in which the maintenance shall terminate. The non-modifiable during its term carried into the 2000 agreement, which is the new agreement. That's the first reason we say it's non-modifiable, because that petition of the contract says it's non-modifiable during its term. The new agreement set the terms of the wife's 62nd birthday. The second reason we say it's non-modifiable, because the law in Illinois is that you can make an agreement to make maintenance non-modifiable. The law in Illinois, as he stated, is not that you have to put in the agreement that the maintenance is non-modifiable. You have to look at the agreement, and you can determine that it's non-modifiable. If you look at this agreement, you have the language taken over from the first agreement where it said it's non-modifiable during its term. You have the language in the second agreement where they made the change where it set up a particular schedule with an end date of her 62nd birthday. And the most unusual thing about this case, and you won't find it in any other cases cited by the appellant, is that both parties on the stand testify of their understanding when they made this deal in 2007 that this was the end of the maintenance issue. It was not to be modified. She was not allowed to come back to answer anymore, and she did. So both parties on the record, and the judge specifically made findings in his court order when he made this, he said in paragraph 8 of the court order, which you can feel from the trial at this stage, both parties testified in open court that their understanding of the January 9, 2007 agreement is that they could not come back to court to ask the court to increase the maintenance. They both testified the amount of maintenance set in the January 9, 2007 court order was the amount of maintenance to be paid, and that would terminate on Mrs. Fonda's 62nd birthday. And the site space is a transcript where they testified. So I think one language is crystal clear that it can't be modified. They set up a payment schedule, and here it ends. And on top of that, you have them both testifying that it was their understanding of that agreement. It was never to be modified, and that was the end of the maintenance issue. So I think it is not modifiable, and I think that the trial court was correct in making that decision. But the trial court also went on to make the decision that there was no material change in circumstances. And as you know, the standard of review on modification of maintenance is an abuse of discretion, and an abuse of discretion is where no reasonable man could make the same decision. And they have the burden of showing the change of circumstances. And the evidence, the judge kind of focused, but the law is he doesn't have to make a ruling on every item set forth in 510, which is the standard for modification of maintenance. He doesn't have to set those out in each of his orders. But what he seemed to fall in on is, one, that her condition was the same in 2007 when she made the deal in January of 2007, as it was when we went to court the last time in 2012, is that she couldn't work. She couldn't work in 2007. She couldn't work in 2012. And Dr. Renner's income was about the same. He testified he had one good year in the day trying to point out that he made a million dollars. But the evidence shows that his pay stub for the first six months of 2012 was $311,000, which means his income would have been $622,000. His income in 2006 was $674,000. So his income stayed flat. And he testified why his income went back down because he lost a partner, his overhead went up, and his business was falling off. So the trial court found that there was no change in circumstances. She didn't attempt to do anything to help herself, and therefore they denied her petition to modify the maintenance. And you can only set that aside if it's an abuse of discretion, and I don't think that you can find that's an abuse of discretion. Mr. Spray, I haven't read the record completely, but was there anything in the record that she was asked? Do you understand this is non-modifiable even though we're increasing the time? Yeah, it's in the record. When she testified, in fact, the sight of him, I believe, she testified that she knew that this contract was non-modifiable. And here's the question. Here's the question. I'm not going to read the whole thing, but in that order, basically raised maintenance to $5,000 a month, reduced it to $432,000, and finally ceased on the 62nd birthday. Is that correct? Yes. Was that agreement reached? Was that reached by agreement? By agreement, definitely. It was your understanding that was the end of the maintenance issue, absolutely. And you would not be back here fighting about it. It was thought it was the end, and that was my total understanding of it. They both testified to that. They both testified. They understood that the 2007 order, the testimony sets forth from my brief, and the judge found that they both testified that the 2007 order set up maintenance until her 62nd birthday. And she understood that when it was done. She understood she couldn't come back and get any more. And so did he. In spite of that, she came back, and we figured the trial court was absolutely correct in finding it non-modifiable. If you disagree with the trial court, I don't think you can find that the trial court abused its discretion in failing to award modification of maintenance. It's just not fair to penalize my client because he's successful. They set this ruling up in 2002, gave her $755,000 worth of cash, gave her maintenance to child support in 2005, gave her another schedule of maintenance, and she just can't live within her means. And my client shouldn't be punished for that. Thank you. Thank you, Counsel. Counsel? Just a few points. There was no testimony that the parties thought it wasn't modifiable. The testimony is, was it your understanding, Shelly, that this was the end of the maintenance issue? Absolutely. And you would not be back here fighting about it. I thought it was the end. That was my total understanding. But that goes to the issue of is it temporary or is it permanent. Every maintenance order, if it doesn't, is it permanent? Let me ask you this. Let's assume that your reading of the language is correct, that the revision in 2007 removed the non-modifiability. Why shouldn't we construe the testimony of both parties in 2012 that this was the end as a recognition that it is non-modifiable? And wouldn't you agree that if there were, if the procedures in 2007 removed the non-modifiability in this situation, both parties were capable of waiving that and agreeing that this was non-modifiable in 2012? Well, a couple of things, Your Honor. First of all, 2002 was modifiable because it says it's not modified during his time, unless she files a petition. So that's modifiable. Then you have the 2007 order and you're asking, well, didn't they seem to testify that that was non-modifiable? No, I don't think they did. What they were testifying about in 2012 was, as we see the situation right now, that's the end of maintenance. This order can stand. It's looking at the past, what has brought us to this day of testimony, and is there going to be any need for future changes? No, we don't anticipate those now. This order is going to end. But that really doesn't address the future. That's just based on where we are now. This is what I need. The language of their testimony did not, was not based on anticipation for future events. The language of their testimony is pretty clear. This is it, isn't it? That's correct, but this is it, based on where we are now. If the question had been, well, what if your condition deteriorates? Could you anticipate asking for a modification? That question was never asked. That's the question that should have been asked if they want to use the answer to that question. But what was asked is, based on where we are now, do you think this maintenance is enough? Yes, I think it's enough. This is the end of the maintenance issue. But that, every maintenance order ends, I mean, unless it's permanent. But that's different from the issue of can it be modified based on a change in circumstances. And the question wasn't asked, Shelley, what if your circumstances change and your condition deteriorates? Could you anticipate asking for an increase? Well, we don't have an answer to that, and therefore the court can't use a speculative answer to that as a basis for a ruling. So I don't think their testimony was about modifiability in the future, what might happen in the next three, five years. Their testimony was, based on where we are now, we think this is the end of the maintenance discussion. Does that address your question? Yes, it does. A couple other points I'd like to address. When Mr. Sprague says the language of the order talks about maintenance ceasing, I think that's the same thing. Of course it's going to cease unless permanent. That has nothing to do with what happens in the future with changed circumstances. All that says is, based on where we are now, yeah, it's going to end on this date. And, again, if the terms of the 2002 order carry over to the 2007, the 2002 was clearly modifiable if she filed the petition. I say the 2007 was clearly modifiable then if she filed the petition, which she did. And, again, the issue isn't just she couldn't work then, she can't work now, therefore there's no change. The statute provides many other factors that should come into play when you're looking for changed circumstances. So that's all. Thank you. Thank you. We appreciate the briefs and arguments of both counsel. We'll take the case under advisement. The court will be in a short recess and then we'll resume oral argument.